**THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

MAY 2 0 2009

CLER:
ALEX

WILLIAM LUTHER,          )
      **Plaintiff,**       )
                 )
      **v.**            )     **Civil Action No. 1:08cv492**
                 )
CARLOS GUTIERREZ, Secretary,   )
Department of Commerce,      )
      **Defendant.**       )

## MEMORANDUM OPINION

This "mixed" Merit Systems Protection Board (MSPB), discrimination and retaliation case is before the Court on defendant's motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P. Also at issue is the *pro se* plaintiff's cross "Motion[] to Remand to Arbitration, or in the alternative, the MSPB," wherein plaintiff, too, requests summary judgment with respect to his MSPB claim. Both parties have fully briefed and argued the issues raised in the pending motions and the matter is thus ripe for disposition. For the reasons that follow, defendant's motion for summary judgment must be granted in all respects and plaintiff's cross-motion must be denied.

### I.

Resolution of the instant motions requires a detailed summary of the factual record. Thus, the record reflects that plaintiff, William Luther, was hired by the United States Patent and Trademark Office (USPTO) in 1994. Plaintiff was regularly promoted throughout his tenure with the USPTO and ultimately reached the position of GS-14 Primary Patent Examiner.

On March 20, 2006, plaintiff's second-line supervisor, Jin Ng, issued a 22-page Notice of

1

Proposed Removal (NPR) recommending plaintiff's removal from employment based on numerous instances of alleged misconduct. Specifically, the first 16 pages of the NPR provided background information and summarized the alleged misconduct, and the remaining 6 pages consisted of a detailed analysis of the determination of the proposed penalty, as well as a description of plaintiff's reply rights. Also attached to the NPR were 27 numbered exhibits, consisting of various emails, time sheets, disciplinary memoranda and other documentary support for the alleged charges.

In the NPR, plaintiff was charged with five distinct offenses, four of which were further broken down into separate instances of misconduct or "specifications," namely

(i)     being absent without leave ("AWOL") on 28 occasions between July 6 and December 21, 2005, resulting in 221 hours of AWOL;

(ii)    failing to follow proper leave-requesting procedures on 14 occasions between July 6 and October 27, 2005;

(iii)   failing to follow supervisory instructions on 10 occasions between August 5, 2005, and February 4, 2006, specifically by failing to attend scheduled meetings with his supervisor on seven occasions and by failing to follow orders to perform patent examining duties or receive prior approval from his supervisor to perform non-patent examining duties on three occasions;

(iv)    receiving pay for time not worked on eight occasions between June 16 and November 8, 2005, totaling 27 hours and 38 minutes; and

(v)     engaging in conduct unbecoming a federal employee based on the fact that plaintiff, while acting as the union representative for another USPTO employee in a proposed adverse action, surreptitiously recorded an oral reply presented to the deciding

2

official on January 31, 2003, in violation of Department of Commerce Department

Administrative Order (DAO) 207-9.[1]

*See* Def. Ex. 1.

In determining that plaintiff's removal from the USPTO was the appropriate penalty for the

multiple offenses detailed in the NPR, Ng applied the various penalty selection factors established

by the MSPB in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981).[2] In this regard, Ng

---

[1]   DAO 207-9 prohibits departmental officers and employees from secretly recording conversations or possessing any device or equipment designed or commonly used to secretly record conversations in the course of their official duties.

[2]  These factors include:

(1)   The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

(2)   the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

(3)   the employee's past disciplinary record;

(4)   the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

(5)   the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;

(6)   consistency of the penalty with those imposed upon other employees for the same or similar offenses;

(7)   consistency of the penalty with any applicable agency table of penalties;

(8)   the notoriety of the offense or its impact upon the reputation of the agency;

(9)   the clarity with which the employee was on notice of any rules that where violated in committing the offense, or had been warned about the conduct in question;

(10)   potential for the employee's rehabilitation;

(11)   mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and

(12)   the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

concluded, *inter alia*, that plaintiff's repeated acts of misconduct were "extremely serious as they relate to [his] honesty, truthworthiness, and dependability." Def. Ex. 1 at 17. Ng further determined that plaintiff had "not demonstrated any willingness to follow rules, procedures, or directives that relate to proper conduct for a Federal employee." *Id.* In the end, following consideration of all of the relevant *Douglas* factors, Ng concluded that "nothing less than a removal from Federal service and [plaintiff's] position as a Patent Examiner with the USPTO is warranted." *Id.* at 22.

On April 18, 2006, plaintiff, by counsel, submitted a 19-page written response to the NPR, together with two volumes of supporting exhibits and an additional 22-page "Statement" from plaintiff himself. In addition to responding specifically to the charged instances of misconduct,[3]

---

*Douglas*, 5 M.S.P.R at 305-06.

[3] For example, with respect to the 28 alleged instances of being AWOL and 14 instances of failing to follow proper leave-requesting procedures, plaintiff stated, *inter alia*, that during the relevant time periods he was caring for his sick grandmother in Florida and was out of work due to depression; plaintiff further argued that his leave requests were improperly denied on these occasions. Next, with respect to the 10 counts of failure to follow supervisory instructions, plaintiff responded that he did not attend the scheduled disciplinary meetings because of one or more of the following: (i) he was not informed of the general nature of the meetings, (ii) he was not given adequate time to secure union representation, (iii) he was caring for his sick grandmother in Florida or (iv) his preferred union representative was unavailable. Plaintiff further stated that despite the fact that he had received an oral warning for unacceptable performance in three critical elements of his performance plan and had therefore been instructed to perform five hours of patent examining work per day, plaintiff did not produce the required work during that period because he was either on annual leave or performing union-related work. Next, in response to the charge that he received pay for time not worked, plaintiff argued that using the USPTO's turnstile records was not the proper means of determining attendance because these records do not reflect whether an employee was utilizing a temporary badge or was out of the office performing legitimate USPTO business. Finally, with respect to the charge of conduct unbecoming a federal employee, plaintiff argued that the administrative rule cited by the USPTO — DAO 207-9 — was inapplicable because plaintiff, at the time the surreptitious recording took place, was not acting "in the course of his official duties" as a patent examiner, but was acting instead as a fellow employee's union representative. Def. Ex. 16 at 3. Plaintiff further argued that the recording was justified given plaintiff's "prior experience with the agency's misreporting of oral responses in other cases." *Id.* at 4.

plaintiff also responded generally that the proposed penalty of removal was unreasonable under the *Douglas* factors and constituted unlawful (i) disability discrimination based on his known medical conditions of depression and Attention Deficit Disorder (ADD) and (ii) retaliation for his prior and continuing protected activity before the Equal Employment Opportunity Commission (EEOC).[4] In addition to plaintiff's written reply, plaintiff's counsel also presented an oral reply to the deciding official on April 19, 2006, and plaintiff thereafter submitted additional documents in response to the NPR on May 1, 2006.

On May 24, 2006, Margaret Focarino — the Deputy Commissioner for Patent Operations and the final decisionmaker in this case — issued a "Decision on Proposed Removal" therein upholding plaintiff's removal, as proposed in the NPR. Specifically, after considering the entire record, including, *inter alia*, the 22-page NPR, with attachments, and plaintiff's response thereto, Focarino overruled one of the eight alleged instances of receiving pay for hours not worked, but sustained all of the remaining charges asserted against plaintiff in the NPR. Focarino agreed with Ng's "thorough analysis" of the *Douglas* factors, deciding ultimately that plaintiff's removal "promote[d] the efficiency of the service." Def. Ex. 12 at 2. Focarino emphasized in her written decision that the record established "a high likelihood" that plaintiff would repeat his misconduct and further, that plaintiff's misconduct "violates basic principles or conduct rules that are uniformly applied to all USPTO employees." *Id.* at 1. Finally, with respect to plaintiff's allegations of discrimination, Focarino found that plaintiff had failed to submit sufficient medical documentation establishing that he has a qualifying mental or physical disability; nor was there a record of plaintiff having been

---

[4] The record reflects that plaintiff filed an administrative claim of discrimination against the USPTO in October 2003, which claim apparently remains pending before the EEOC.

"regarded by" his supervisors or the relevant decisionmakers as having such an impairment. Even so, Focarino appropriately noted that "a person with a disability is still held to the Agency's standards for conduct if a person who is without a disability is held to the same standards." *Id.* at 2. In the end, therefore, Focarino concluded that "[a] penalty of less than removal . . . would not be appropriate" and thus advised plaintiff in her written decision that his removal from the USPTO would be effective on May 26, 2006. *Id.*

Plaintiff subsequently challenged his removal by invoking arbitration, as authorized under the negotiated grievance procedures set forth in his collective bargaining agreement. And, following a three-day hearing, the arbitrator issued a thorough 60-page opinion and award on June 1, 2007. In this regard, while the arbitrator did not uphold the charge of conduct unbecoming a federal employee, he sustained the remaining four charges set forth in the NPR, merging some of the specific alleged instances of misconduct and finding that others had been withdrawn. The arbitrator also found that plaintiff had failed to demonstrate that the USPTO engaged in disability discrimination or retaliated against plaintiff based on his prior EEO activity. Finally, the arbitrator concluded that the penalty of removal, as imposed here, did not exceed the limits of reasonableness.[5]

Following conclusion of the arbitration proceedings, plaintiff requested review of the

---

[5] In the course of the arbitration proceedings, plaintiff, by his union representative, requested that the arbitrator consider evidence of penalties imposed on other USPTO employees who had engaged in similar misconduct. The arbitrator, in turn, responded that any appropriate comparator employees must have (i) worked in the same unit, (ii) had the same supervisors, and (iii) engaged in substantially similar misconduct. Def. Ex. 18 at 57 (citing *Von Muller v. Dep't of Energy*, 101 M.S.P.R. 91, 101 (2006)). In this regard, the arbitrator determined that "[n]one of the first two items of requisite information has been made available, and [there was] no arguable instance of the third factor." *Id.* The arbitrator further noted that "where the punishment is appropriate to the seriousness of an employee's offense, an allegation of disparate penalties is no basis for . . . mitigation of the agency's penalty determination." *Id.* (citing *Dolezal v. Dep't of the Army*, 58 M.S.P.R. 64, 72 (1993)).

6

arbitrator's decision by the Merit Systems Protection Board (MSPB), specifically challenging the arbitrator's conclusion regarding the imposed penalty of removal. Plaintiff essentially argued on review "his own views concerning how the *Douglas* factors should have been weighed [,]. . . assert[ing] that, because the arbitrator weighed the *Douglas* factors differently than he would, the arbitrator's decision must be set aside." *Luther v. Department of Commerce*, 107 M.S.P.R. 616, 624 (2008). Yet, the question before the MSPB was only whether the arbitrator erred as a matter of law in determining the maximum reasonable penalty. *See, e.g., Fulks v. Department of Defense*, 100 M.S.P.R. 228 (2005). And, as to this narrow issue, the MSPB concluded that plaintiff "failed to show that the arbitrator misallocated the burdens of proof, employed the wrong analytical framework, or committed any other legal error in his analysis of the penalty." *Luther*, 107 M.S.P.R. at 624. The MSPB therefore sustained the arbitrator's decision in an Opinion and Order dated January 17, 2008, thereby upholding the penalty of removal imposed on plaintiff in this instance. *See id*. The MSPB further noted that plaintiff had "not argued that the arbitrator erred in his analysis of [plaintiff's] discrimination and retaliation claims," and in any event, that plaintiff had "failed to show legal error with regard to the affirmative defenses" of discrimination and retaliation alleged by plaintiff in the course of the arbitration proceedings. *Id.* at 623.

Plaintiff next filed a timely petition with the Equal Employment Opportunity Commission (EEOC), seeking review of the MSPB's ruling with respect to his disability discrimination and retaliation claims. The EEOC Office of Federal Operations subsequently issued a decision on April 11, 2008, concurring with the MSPB's finding of no discrimination or retaliation. In support of this conclusion, the EEOC noted, *inter alia*, that "even assuming that [plaintiff] is an individual with a disability . . . an employer may discipline an individual with a disability for violating work place

7

conduct standards even if the misconduct results from the disability." Def. Ex. 14 at 2. The EEOC

further determined that there was nothing in the record to establish that plaintiff had requested any

reasonable accommodations based on his alleged disability prior to his receipt of the NPR, noting

also that "reasonable accommodation is prospective and employers are not required to excuse *past*

misconduct." *Id.* (emphasis in original). Finally, the EEOC concluded that plaintiff failed to prove

that the performance-based reasons offered by the USPTO for plaintiff's removal "were pretext to

mask a retaliatory motivation." *Id.*

On May 15, 2008, plaintiff initiated the instant "mixed case" action seeking both review of

the MSPB's decision as well as *de novo* review of his discrimination and retaliation claims. In his

complaint, plaintiff relied on five separate statutes or constitutional provisions in support of his

claims, namely (i) the Due Process Clause of the United States Constitution, (ii) 42 U.S.C. § 1981(a),

(iii) Title VII of the Civil Rights Act (Title VII), 42 U.S.C. § 2000e *et seq.*, (iv) the Rehabilitation

Act, 28 U.S.C. § 701 *et seq.*, and (v) the Civil Service Reform Act (CSRA), 5 U.S.C. § 2302.

On December 29, 2008, defendant filed a motion to dismiss pursuant to Rule 12, Fed. R. Civ.

P. or, in the alternative, for summary judgment pursuant to Rule 56, Fed. R. Civ. P. Following a

hearing and by Order dated January 30, 2009, defendant's motion to dismiss was granted with

respect to plaintiff's claims pursuant to the Due Process Clause and 42 U.S.C. § 1981(a). *See Luther*

*v. Gutierrez*, 1:08cv492 (E.D. Va. Jan. 30, 2009) (Order).[6] At the same time, defendant's motion

for summary judgment was taken under advisement with respect to plaintiff's remaining claims

---

[6] These particular claims were dismissed, *inter alia*, because Title VII and the Rehabilitation Act provide the exclusive remedies for plaintiff's allegations of discrimination and retaliation in this instance. *See, e.g., Brown v. General Services Admin.*, 425 U.S. 820, 835 (1976) (recognizing that Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment).

under Title VII, the Rehabilitation Act and the CSRA. *Id.* Following this ruling, on February 6,

2009, plaintiff filed a "Motion[] to Remand to Arbitration, or in the alternative, the MSPB," arguing

therein that the MSPB decision should be set aside because it is contrary to law and not supported

by substantial evidence. In essence, therefore, plaintiff has filed a cross-motion for summary

judgment with respect to his MSPB claim. Defendant filed a response to plaintiff's motion in this

regard on February 20, 2009. All pending motions pertaining to plaintiff's remaining claims under

Title VII, the Rehabilitation Act and the CSRA are now ripe for disposition and are addressed here.

## II.

While normally the Court of Appeals for the Federal Circuit has jurisdiction over review of

decisions made by the MSPB concerning claims of adverse federal personnel actions, a federal

district court may nonetheless review MSPB decisions in cases where, as here, the plaintiff has also

raised a claim of discrimination or retaliation. *See Afifi v. U.S. Dep't of Interior*, 924 F.2d 61, 62-63

(4th Cir. 1991). Indeed, in a so-called "mixed case" — where the plaintiff challenges an action that

allows him to seek review before both the MSPB and the EEOC — the plaintiff must file suit in the

appropriate federal district court, rather than the Federal Circuit, following issuance of the final

MSPB and EEOC decisions. *Id.* Yet, in such mixed cases, it is important to note that the standard

of review required for any claims of discrimination differs significantly from the standard applicable

to any non-discrimination claims raised therein. Specifically, a district court must conduct a *de novo*

review of any claims of discrimination or retaliation previously presented before the EEOC, while

review of any non-discrimination claims presented before the MSPB is limited to the administrative

record and is thus subject to a more deferential standard established by statute. *See* 5 U.S.C. §

7703(c). Each of these distinct analyses is separately addressed below.

9

### III.

First, with respect to the required *de novo* review of plaintiff's disability discrimination and retaliation claims, the necessary showing to survive a motion for summary judgment is clear and well-settled. Indeed, under the familiar *McDonnell Douglas/Burdine* proof structure,[7] a plaintiff must first establish a *prima facie* case of discrimination or retaliation. *See McDonnell Douglas*, 411 U.S. at 802, n. 13. If the plaintiff establishes a *prima facie* case, the defendant may then rebut the presumption of discrimination or retaliation by proffering a legitimate, non-discriminatory or non-retaliatory reason for the challenged employment action or disparate treatment. *See id.*; *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2106 (2000). This burden is one of production, not persuasion, and thus "it can involve no credibility assessment." *See Burdine,* 450 U.S. at 256. Once the defendant has proffered a legitimate non-discriminatory reason for the challenged employment action, the burden then shifts back to the plaintiff to produce some evidence showing that the employer's proffered legitimate, non-discriminatory or non-retaliatory reason for its actions is pretextual. *See Reeves*, 120 S. Ct. at 2106. For example, a plaintiff may attempt to establish that he or she was a victim of intentional discrimination "by showing that the employer's proffered explanation is unworthy of credence." *Id.* Proof that the defendant's explanation is unworthy of credence, however, is simply one form of circumstantial evidence that is probative of intentional discrimination. *See id.* at 2108. Thus, as recognized in *Reeves*, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may

---

[7] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 2109.[8]

These well-settled principles, applied here, compel the conclusion that defendant is entitled to summary judgment with respect to plaintiff's claims of discrimination and retaliation under the Rehabilitation Act and Title VII. Both claims are addressed here.

## A.

Section 504 of the Rehabilitation Act, provides, in pertinent part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To establish a *prima facie* case of disability discrimination under this statute, a plaintiff must establish (i) that he has a qualifying disability, (ii) that he is otherwise qualified for the employment or benefit in question, and (iii) that he was excluded from the employment or benefit "due to discrimination solely on the basis of the disability." *See Doe v. University of Maryland Medical System Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995) (citing *Gates v. Rowland*, 39 F.3d 1439, 1445 (9th Cir. 1994)).

Here, even assuming plaintiff were able to establish that he has a qualifying disability based on his alleged depression and ADD, his claim flatly fails on the second and third prongs of the *prima facie* case, namely (i) that he was otherwise qualified for continued employment with the USPTO

---

[8] Yet, it is important to note that there will certainly be instances where, "although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.* In this regard, the Supreme Court recognized in *Reeves* that an employer would be entitled to summary judgment if, for example "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*

and (ii) that he was terminated from his position due to discrimination <u>solely</u> on the basis of the alleged disability. *See Doe*, 50 F.3d at 1264-65.

As an initial matter, the record is unmistakably clear that defendant was not meeting his employer's legitimate performance expectations at the time of his termination. Indeed, the record reflects multiple incidents in which plaintiff (i) failed to follow supervisory instructions, (ii) failed to follow leave requesting procedures, (iii) was absent without leave,[9] and (iv) received pay for time not worked. And significantly, plaintiff does not dispute that the majority of the alleged performance incidents relied on by the USPTO to support plaintiff termination actually occurred. Rather, in most instances, plaintiff either attempts to explain the incidents with additional facts or to assign blame for the incidents to others, including specifically Chi Pham, his first-line supervisor. In this regard, plaintiff's repeated allegations that he was somehow "misled" by Pham to ignore warnings pertaining (i) to various time and attendance requirements and (ii) to certain performance improvement deadlines imposed on plaintiff, are wholly baseless and unsupported by the record.[10] And, in the end,

---

[9] Attendance is clearly an essential function of most employment positions. *See Tyndall v. National Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994) (concluding that "a regular and reliable level of attendance is a necessary element of most jobs" and thus, that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a "qualified" individual for purposes of the Americans with Disabilities Act); *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994) (recognizing that "coming to work regularly" is "an essential function" of any job); *Law v. United States Postal Service*, 852 F.2d 1278, 1279-80 (Fed. Cir. 1988) (concluding that attendance is a minimum function of any job).

[10] For example, plaintiff clams he was "misled" to report his time inaccurately and not to attend scheduled meetings. Doc. 35 at 7. Plaintiff further contends that Pham "began misleading the Plaintiff regarding performance deadlines" sometime in 2004. Doc. 38 at 6. Such speculative allegations are clearly insufficient to withstand a properly supported motion for summary judgment. *See Ash v. United Parcel Service, Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986) (recognizing that unsupported speculation is not sufficient to defeat a summary judgment motion) (citing *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985)).

plaintiff's unsupported allegations are insufficient to establish a *prima facie* case of disability discrimination, as it is the employer's performance expectations that are the relevant inquiry, not plaintiff's subjective beliefs regarding the adequacy of his work performance. *See Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) (noting that "'[i]t is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff") (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)). Nor is the fact that plaintiff may have received positive performance evaluations in earlier years dispositive of the question whether the USPTO was satisfied with plaintiff's performance and professional conduct during the years immediately preceding his termination. *See, e.g., Smith v. Chamber of Commerce of U.S.*, 645 F. Supp. 604, 607 (D. D.C. 1986) (stating that "whatever success plaintiff enjoyed in his early and middle years with the Chamber is not relevant to a determination that defendant was unsatisfied with his performance in the time period prior to his termination").

Plaintiff is likewise unable to establish that he was terminated due to discrimination solely on the basis of his alleged disability, as required to state a *prima facie* case under the Rehabilitation Act. *See Doe*, 50 F.3d at 1264-65 (identifying the third prong of the *prima facie* case as exclusion from the employment or benefit in question "due to discrimination solely on the basis of the disability"). To be sure, the stated performance-based reasons for plaintiff's termination were thoroughly detailed in a 22-page NPR, with numerous supporting documents and other attachments. And, an employer is clearly authorized to terminate an employee — even if that employee is disabled — for clear violations of company rules and policies, as occurred here. *See Ogawa v. Henderson*, 10 F. App'x 587, 588 (9th Cir. 2001) (recognizing that "[e]mployers may terminate otherwise disabled individuals who violate company rules," including specifically leave policies and

13

procedures).   Indeed, the Rehabilitation Act does not serve to immunize a disabled employee from discipline in the workplace based on a violation of a valid work rule applied to all employees. *See, e.g., Pernice v. City of Chicago*, 237 F.3d 783, 785 (7th Cir. 2001) (noting that "[i]t is well-established that an employee can be terminated for violations of valid work rules that apply to all employees, even if the employee's violations occurred under the influence of a disability"). In the circumstances, therefore, given the legitimate performance-based incidents and violations identified and relied on by the USPTO to justify plaintiff's termination, plaintiff is clearly unable to establish that he was terminated solely on the basis of his alleged disability, as required to state a *prima facie* case. *See Doe*, 50 F.3d at 1264-65 .

Yet, even assuming plaintiff were able to establish a *prima facie* case in this instance, his disability discrimination claim would nonetheless fail because defendant is unable to rebut the legitimate, non-discriminatory reasons for his termination by the USPTO. Specifically, plaintiff has failed to produce any evidence showing that the multiple performance-related reasons for his termination are somehow pretextual for discrimination;  nor has he produced any admissible evidence supporting his contentions or suggesting that defendant's stated reasons for his termination are unworthy of credence in any respect. *See Reeves*, 120 S. Ct. at 2106; *Buko v. American Medical Laboratories, Inc.*, 830 F. Supp. 899, 905 (E.D. Va. 1993) (granting defendant's motion for summary judgment on a disability discrimination claim under the Rehabilitation Act where plaintiff had not offered any evidence demonstrating that the stated reasons for her termination were pretextual). At most, plaintiff has offered only speculative allegations of pretext and discrimination,[11] which, as

---

[11] It should also be noted that plaintiff's contention that Focarino — the final decision maker in this case — merely "rubber-stamped" the NPR prepared by plaintiff's second-line supervisor is wholly unpersuasive. Indeed, plaintiff's rubber-stamping allegations are flatly contradicted by the

previously noted, are clearly insufficient to withstand a motion for summary judgment. *See Ash*, 800 F.2d at 411-12 (recognizing that unsupported speculation is not sufficient to defeat a summary judgment motion).

For these reasons, plaintiff's disability discrimination claim under the Rehabilitation Act fails on the merits and defendant is entitled to summary judgment in this respect.[12]

### B.

Plaintiff's retaliation claim fails for similar reasons. To establish a *prima facie* case of retaliation under Title VII, plaintiff must show (i) that he engaged in a protected activity; (ii) that he suffered an adverse employment action; and (iii) that a causal connection existed between the protected activity and the asserted adverse action. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004) (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)).

As an initial matter, it is important to note that the alleged protected activity in this instance is not entirely clear from the record. In some instances, plaintiff appears to argue that he was

---

fact that Focarino, following her review of the entire record including specifically plaintiff's lengthy response to the NPR, issued a written decision and ultimately elected not to uphold one of the alleged instances of receiving pay for time not worked. And, despite plaintiff's unsupported contentions to the contrary, Focarino's deposition — which, as a matter of grace, plaintiff was permitted to submit in an untimely fashion for inclusion in the summary judgment record — provides no evidence to support plaintiff's claims in this instance.

[12] It should also be noted that any claim based on defendant's alleged failure to accommodate plaintiff's disability — while not specifically asserted by plaintiff in this instance — would likewise fail for the reasons already stated. Moreover, there is nothing in the record to suggest that plaintiff ever requested an accommodation based on any alleged disability prior to his receipt of the NPR or that defendant was ever aware that plaintiff was in need of any such accommodations. *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 (4th Cir. 2001) (recognizing that in order to establish a *prima facie* case for failure to accommodate, the plaintiff must demonstrate (i) that he has a qualifying disability, (ii) that the employer had notice of the disability; (iii) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations).

terminated in retaliation for having filed an administrative complaint of discrimination on his own

behalf against the USPTO sometime in 2003, which complaint it appears, despite the passage of over

5 years, may still be pending before the EEOC. Yet, in other parts of the record, plaintiff claims that

he was terminated in retaliation for his participation as a union representative in various EEO

proceedings on behalf of <u>other</u> USPTO employees, including specifically Edward Pipala.[13]

Regardless of which of these alleged protected activities plaintiff relies on in support of his

retaliation claim, plaintiff's claim nonetheless fails on other grounds. Indeed, not only has plaintiff

failed to produce any evidence — apart from pure speculation — of a causal connection between his

alleged protected activity and his termination, as required to state a *prima facie* case of retaliation,

he is likewise unable to rebut the USPTO's legitimate non-retaliatory reasons for his termination,[14]

as detailed above. *See Honor*, 383 F.3d at 188; *supra* Part A.

For these reasons, plaintiff's Title VII retaliation claim, like his disability discrimination

claim, lacks merit and defendant's motion for summary judgment on this claim must be granted.

---

[13] *See, e.g.*, Doc. 35 at 5-6 (alleging that "Focarino terminated the Plaintiff based on the Pipala EEO Complaint by Notice dated less than six days from [an] authorization of payment to Mr. Pipala . . . [and] Focarino intentionally rubber-stamped the Plaintiff's termination at least in retaliation for making payments"); Doc. 35 at 7 (reiterating that "Margaret Focarino terminated the Plaintiff at least because of the Pipala EEO Complaint"); Doc. 45 at 2 (stating that "[t]he Defendant terminated the Plaintiff based on union activity including payments in EEO Complaints, recognized by MSPB law as Title VII retaliation").

[14] *See, e.g., Pardo-Kronemann v. Jackson*, 541 F. Supp. 2d 210, 222-23 (D. D.C. 2008) (determining that agency had articulated legitimate non-retaliatory reason for listing employee as AWOL due to employee's failure to follow leave requesting procedures by obtaining supervisor's permission prior to taking leave); *Mills v. Barreto*, 2004 WL 3335448, at *7 (E.D. Va. Mar. 8, 2004) (noting that plaintiff's "repeated instances of leaving the workplace without approval, repeated failure to follow supervisory orders to perform work, repeated insolence and abusive language" constitute legitimate, non-retaliatory reasons for plaintiff's termination).

**IV.**

The final step in the analysis requires review of the MSPB's decision with respect to plaintiff's non-discrimination claims. This review is limited to the administrative record and, as previously noted, is subject to a more deferential standard established by statute. Thus, the decision of the MSPB must be affirmed unless it is found to be:

    (1)    arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

    (2)    obtained without procedures required by law, rule, or regulation having been followed; or

    (3)    unsupported by substantial evidence.

5 U.S.C. § 7703(c). For purposes of this analysis, it is important to note that "[d]etermination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency," in this case the USPTO. *Brook v. Corrado*, 999 F.2d 523, 528 (Fed. Cir. 1993) (quoting *Beard v. General Services Admin.*, 801 F.2d 1318, 1322 (Fed. Cir. 1986)). Because of this, reviewing courts "will not disturb a penalty unless it exceeds the range of permissible punishment or is 'so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.'" *Gonzales v. Defense Logistics Agency*, 772 F.2d 887, 889 (Fed. Cir. 1985) (quoting *Villela v. Dep't of the Air Force*, 727 F.2d 1574, 1576 (Fed. Cir. 1984)).

Here, the record reflects that the MSPB reviewed the arbitrator's decision to affirm plaintiff's removal for misconduct under the required scope of review, namely determining whether the arbitrator erred as a matter of law in interpreting the civil service laws, rules or regulations. *See Luther v. Department of Commerce*, 107 M.S.P.R. at 620 (recognizing that "[t]he Board will modify or set aside an arbitration decision only where the arbitrator has erred as a matter of law in

17

interpreting civil service law, rule or regulation". . . and that "[a]bsent legal error, the Board cannot substitute its conclusions for those of the arbitrator, even if it disagrees with the arbitrator's decision") (citing *Fulks v. Department of Defense*, 100 M.S.P.R. 228 (2005)). Thus, the arbitrator's factual determinations are entitled to deference by the MSPB "unless the arbitrator erred in his legal analysis, for example, by misallocating the burdens of proof or employing the wrong analytical framework." *Luther*, 107 M.S.P.R. at 620 (citing *Jones v. Department of the Treasury*, 93 M.S.P.R. 494 (2003)). And, after a careful review of the administrative record, the MSPB correctly concluded that the arbitrator did not so err. *See id.*

Nor can plaintiff establish that the MSPB decision was arbitrary, capricious, an abuse of discretion, contrary to law or unsupported by substantial evidence. To the contrary, the record demonstrates that plaintiff's removal was more than reasonable given, *inter alia*, plaintiff's multiple instances of (i) unauthorized absences, (ii) failure to follow leave requesting procedures, (iii) failure to follow supervisory instructions and (iv) receipt of pay for time not worked. Indeed, the disciplinary action imposed on plaintiff by the USPTO in this instance — removal — fell squarely within the range of permissible punishments set forth in the Department of Commerce's (DOC) "Table of Offenses and Penalties." *See* Def. Ex. 1, Tab 1.[15] Plaintiff's arguments to the contrary are simply unpersuasive.

In an attempt to avoid the result reached here, plaintiff argues, *inter alia*, that the penalty of removal was unreasonable when compared to the penalties imposed on other individuals who were

---

[15] Even so, the MSPB has recognized that a published table of penalties is but one factor an agency must consider in determining an appropriate penalty for an employee's misconduct and an agency may thus deviate from such guidelines when a more severe penalty is warranted by the circumstances. *See Chatman v. Dep't of Army*, 73 M.S.P.B. 582, 587-88 (1997).

found to have engaged in similar misconduct. Yet, as the arbitrator correctly recognized, nothing in the administrative record revealed that any other relevant employees engaged in misconduct that was substantially similar to the misconduct in which plaintiff engaged, as required to constitute an appropriate comparator. *See* Def. Ex. 18 at 57 (citing *Von Muller v. Dep't of Energy*, 101 M.S.P.R. 91, 101 (2006)). To the contrary, none of the individuals identified in the course of the administrative proceedings and relied on by plaintiff to support this argument had the extensive pattern of misconduct that the arbitrator found plaintiff had committed. The MSPB therefore did not err in upholding the arbitrator's determination that the penalty of removal was reasonable because there was no evidence that any other similarly situated employees were treated differently. Moreover, even had plaintiff identified cases of other USPTO employees receiving lesser penalties for similar misconduct, it is clear that "the inconsistency of a penalty with other cases is not dispositive where[,] [as here,] the penalty is appropriate to the sustained misconduct." *Schoenrogge v. Dep't of Justice*, 2005 WL 2210323, at *4 (Fed. Cir. Sept. 13, 2005) (citing *Rackers v. Dep't of Justice*, 79 M.S.P.R. 262, 283-84 (1998), *aff'd*, 194 F.3d 1336 (Fed. Cir. 1999) (Table)).[16]

Plaintiff's remaining arguments with respect to the MSPB decision are unpersuasive; indeed, many of plaintiff's arguments either mischaracterize the applicable law or the administrative record, and the remainder consist of speculative arguments that have no evidentiary support. To be sure, plaintiff's filings are replete with unsupported, speculative allegations, which are clearly insufficient to withstand summary judgment in this instance. *See Ash*, 800 F.2d at 411-12.

---

[16] Although plaintiff contends the USPTO stipulated that the penalty imposed on other individuals who committed similar misconduct was a formal letter of counseling, the record plainly belies this contention; the agency made no such stipulation in the course of the administrative proceedings.

In sum, then, a careful review of the administrative record[17] makes clear that plaintiff has

failed to establish that the MSPB's decision was either (i) arbitrary, capricious, an abuse of discretion

or otherwise not in accordance with law, (ii) obtained without procedures required by law, rule, or

regulation having been followed, or (iii) unsupported by substantial evidence. *See Tiburzi v. Dep't*

*of Justice*, 269 F.3d 1346, 1351 (Fed. Cir. 2001) (recognizing that plaintiff bears the burden of

establishing error in an MSPB decision). The decision of the MSPB must therefore be affirmed and

defendant's motion for summary judgment with respect to plaintiff's claim under the CSRA must

be granted.

## V.

For the foregoing reasons, defendant's motion for summary judgment on plaintiff's

remaining claims under the Rehabilitation Act, Title VII and the CSRA must be granted and

plaintiff's cross-motion must be denied.

An appropriate Order will issue.

Alexandria, VA
May 20, 2009

---

[17] By Order dated February 27, 2009, defendant was directed (i) to assemble for filing the MSPB administrative record, (ii) to meet and confer with plaintiff to assure that the record was reasonably complete and contained all of the materials necessary to resolve plaintiff's CSRA claim, and (iii) to file the complete administrative record by March 13, 2009. *See Luther v. Gutierrez*, 1:08cv492 (E.D. Va. Feb. 27, 2009) (Order). Defendant thereafter complied with this Order and thus submitted a certified copy of the entire MSPB administrative record on March 13, 2009. This voluminous record — consisting of hundreds of pages of documents divided into more than 20 volumes — was then incorporated in, and made a part of, the summary judgment record and was fully reviewed prior to resolution of the instant motions.

In sum, then, a careful review of the administrative record[17] makes clear that plaintiff has failed to establish that the MSPB's decision was either (i) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, (ii) obtained without procedures required by law, rule, or regulation having been followed, or (iii) unsupported by substantial evidence. *See Tiburzi v. Dep't of Justice*, 269 F.3d 1346, 1351 (Fed. Cir. 2001) (recognizing that plaintiff bears the burden of establishing error in an MSPB decision). The decision of the MSPB must therefore be affirmed and defendant's motion for summary judgment with respect to plaintiff's claim under the CSRA must be granted.

## V.

For the foregoing reasons, defendant's motion for summary judgment on plaintiff's remaining claims under the Rehabilitation Act, Title VII and the CSRA must be granted and plaintiff's cross-motion must be denied.

An appropriate Order will issue.

T. S. Ellis, III
United States District Judge

Alexandria, VA
May 20, 2009

---

[17] By Order dated February 27, 2009, defendant was directed (i) to assemble for filing the MSPB administrative record, (ii) to meet and confer with plaintiff to assure that the record was reasonably complete and contained all of the materials necessary to resolve plaintiff's CSRA claim, and (iii) to file the complete administrative record by March 13, 2009. *See Luther v. Gutierrez*, 1:08cv492 (E.D. Va. Feb. 27, 2009) (Order). Defendant thereafter complied with this Order and thus submitted a certified copy of the entire MSPB administrative record on March 13, 2009. This voluminous record — consisting of hundreds of pages of documents divided into more than 20 volumes — was then incorporated in, and made a part of, the summary judgment record and was fully reviewed prior to resolution of the instant motions.